IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEREK M. WILLIAMS,

                              Plaintiff,

        v.                                                              ORDER

DR. SCHMIDT, DR. BREEN,                                    14-cv-487-jdp
DR. HAMILTON, and DR. OLBINSKI,

                              Defendant.

---

Plaintiff Derek Williams, an inmate at the Green Bay Correctional Institution (GBCI), is proceeding on claims that psychological staff at the prison have failed to properly treat his mental illness and that defendant Dr. Todd Hamilton[1] placed him in unconstitutionally harsh conditions of confinement during two stints in "observation" status. I initially denied plaintiff leave to proceed on conditions of confinement claims against Hamilton, but later allowed plaintiff to proceed on his claim after he supplemented his complaint with more detailed allegations supporting that claim. I summarized his allegations as follows:

> Plaintiff now states that when he was in observation status from January 31 to February 10, 2011, the cell was extremely cold (he states that it "felt like [it] was between 35° and 45° . . . daily"), he was provided only with a smock and a blanket, and he would shiver violently enough to make it difficult to eat. Dkt. 17, at 2.
>
> During his second stint in observation, March 21 to May 16, 2011, plaintiff was again subjected to cold conditions with little clothing. He was also forced to eat with his hands, which

---

[1] Plaintiff's complaint states defendant Hamilton's first name as Timothy. In their proposed findings of fact, defendants refer to Hamilton as having the first name Todd. Plaintiff does not object. I assume that the parties are referring to the same person. Attorneys for both sides should confirm that this is the case.

> became a problem because he lacked the means to properly
> clean them—he was given only three squares of toilet paper at a
> time, and no soap with which to wash his hands. In addition,
> plaintiff states that there was feces, urine, and blood on the
> walls of his cell. Plaintiff also states that he was denied his
> eyeglasses, which led to headaches from constant squinting, and
> that he suffered from sleep deprivation because he was
> awakened every 15 minutes by guards.

Dkt. 27, at 2-3.

Defendants have filed a motion for partial summary judgment, seeking dismissal of the conditions of confinement claim on issue preclusion grounds, contending that plaintiff already brought conditions of confinement claims regarding the times at issue here in a previous Western District of Wisconsin case, *Williams v. Raemisch*, No. 11-cv-411-slc.[2] In that case, Magistrate Judge Stephen Crocker granted summary judgment to defendant prison officials on plaintiff's claims that he was subjected to extreme cold, constant illumination, noise, and use of chemical agents, and that he was given inadequate time for recreation while he was in the segregation unit at GBCI from March 2010 to June 2011. *See Raemsich*, No. 11-cv-411, slip op., E.C.F. Dkt. 95 (W.D. Wis. Apr. 1, 2013).

The main thrust of defendants' motion is that plaintiff's conditions of confinement claims should be barred under the doctrine of issue preclusion because plaintiff already litigated those conditions in his 2011 case. A party seeking issue preclusion must meet four elements: (1) the issue is the same as one involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the prior judgment; and (4) the party against whom preclusion is invoked was fully represented in the prior action. *Wash. Group Int'l, Inc. v. Bell, Boyd, & Lloyd LLC*, 383 F.3d 633, 636 (7th Cir. 2004).

---

[2] I will refer to plaintiff's earlier case as "the 2011 case" or *Raemisch*.

Defendants initially contend that some of the conditions plaintiff is challenging—cold temperatures and constant illumination—are the same as those he raised in the 2011 case. More on these claims below. But defendant goes on to argue that other aspects of plaintiff's claims—such as unsanitary conditions and being constantly awakened by guards—are merely *similar* to the claims he raised earlier, and are claims plaintiff *should* have brought in the 2011 case. This is a claim preclusion, not issue preclusion, argument, and defendants do not sufficiently develop a claim preclusion argument in support of their motion.[3] Defendants remain free to re-raise a claim preclusion argument in the final round of dispositive motions, but for now, I will deny their motion as it pertains to conditions not litigated in the 2011 case.

As for plaintiff's claim against defendant Hamilton for subjecting plaintiff to cold temperatures, defendants fail to show that there is an issue settled in the 2011 case that forecloses plaintiff's ability to prevail in this case. In the 2011 case, Magistrate Judge Crocker did not conclude that the segregation cells were warm enough to satisfy the Eighth Amendment. Rather, he concluded that plaintiff failed to show that the defendants *in that case* were deliberately indifferent to the problem:

> Defendants assert that Williams cannot prevail on this claim because he has no evidence to refute defendants' evidence showing that the thermostat on the unit is set at 74 degrees and that no major repairs were done on GBCI's HVAC system in the winter of 2010. As Williams points out, however, defendants admit that temperature readings are not taken in individual cells, so the thermostat setting for the entire unit does not necessarily disprove Williams's claim that the temperatures in the cells themselves are much lower. Williams has averred that

---

[3] I also take defendants to be arguing that I should consider the issue actually litigated in plaintiff's 2011 case to be his general "conditions of confinement," but they do not cite to any authority suggesting that I should apply issue preclusion in such an abstract way.

> ice forms on 31 the windows of the segregation cells during the winter months, he has indicated that his prison-issued clothing and blankets do not provide adequate warmth and he describes the cold as "torturous." Although this is not overwhelming proof of his claim that the cold temperatures subjected him to a substantial risk of serious harm, when the evidence is viewed in the light most favorable to Williams, it probably is enough to create a genuine dispute of fact on this issue.
>
> Nonetheless, plaintiff's claim still fails because he has not proposed any facts that would support a finding that any of the defendants he has named in this suit knew of the freezing temperatures in plaintiff's cell and were deliberately indifferent to it.

Dkt. 95 in the 2011 case, at 31-32. But Hamilton was not a defendant in the 2011 case. The temperature question is perhaps another claim preclusion issue defendants can raise later, but the *Raemisch* opinion does not contain rulings incompatible with a verdict against Hamilton in this case, provided that plaintiff can show that Hamilton acted with deliberate indifference.

Defendants have a good argument that the constant-illumination claim is precluded. Plaintiff's complaint in the 2011 case is somewhat ambiguous as to whether he meant to challenge the conditions in *every* cell to he was assigned between March 2010 and June 2011, including the observation cells, so I cannot say with certainty that plaintiff "actually litigated" the conditions of each particular observation cell to which he was assigned.[4] But it is difficult to see the logic in saying that plaintiff did not actually litigate whether his Eighth

---

[4] In his summary judgment opinion in the 2011 case, Magistrate Judge Crocker stated, "As a result of his string of conduct violations, Williams was housed in GBCI's segregation unit from March 14, 2010 to June 2011. (During this time frame, he spent some periods in observation related to acts and threats of self-harm.)" Dkt. 95 in the 2011 case, at 10. Although this statement is ambiguous, I take it to mean that Judge Crocker saw plaintiff's time spent in segregation status to be qualitatively different than his time spent in observation status.

Amendment rights were violated by constant illumination during 11- and 56-day stints in observation, when the court already concluded that his Eighth Amendment rights were not violated by constant illumination during the 16-month segregation period surrounding those observation periods:

> Williams has failed to make the necessary showing at a time when he must do so. *Schacht v. Wisconsin Dept. of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999) (summary judgment "is the 'put up or shut up' moment in a lawsuit"). Williams was treated by health service staff for headaches, blurry vision, insomnia and depression, but there is no factual support for Williams's assertion that the constant illumination caused or exacerbated his medical problems. In other words, the facts show only that Williams was subjected to 24-hour illumination, that he complained of symptoms, some of his symptoms were treated by health services, and Williams believes that these symptoms were caused by the conditions of the segregation unit. Williams's subjective belief alone does not create a causal link between the illumination and his symptoms. *Powers v. Dole*, 782 F.2d 689, 695 (7th Cir. 1986) ("Conclusory allegations that have no factual support are insufficient to create a genuine issue of material fact").

Dkt. 95 in the 2011 case, at 34.

Also, defendants provide fairly compelling evidence suggesting that there is very little difference between the cells used for the average segregation-status prisoner at GBCI and the cells used for observation. Defendants state, "The observation area is located within the segregation unit." Dkt. 45, at 18. Plaintiff responds that "[a]lthough segregation and observation are housed in the same building they are in separate and delineated areas." Dkt. 41, at 1. In their reply, defendants get much more specific, providing a layout of the "Restricted Status Housing Unit" containing cells used for segregation and observation prisoners, Dkt. 47, and a declaration from the GBCI security director explaining that the

locations of the cells generally used for observation are very close to other cells used for segregation, and that the lighting of these cells is the same. Dkt. 46.

This comes very close to convincing me that issue preclusion should apply to plaintiff's claim about lighting. But because defendants have raised this more specific evidence only in reply, I will deny their motion without prejudice to re-raising it in later summary judgment briefing, so that plaintiff can confront the new evidence and explain how the illumination claim in this case was not already fully litigated in the 2011 case.

The parties have filed a joint motion to stay the September 16, 2016, dispositive motions deadline until after I issue a decision on the pending motion for partial summary judgment. This order resolves the motion for partial summary judgment, but because I infer that the parties seek an extension of the dispositive motions deadline, I will grant that motion. The pretrial deadlines and February 13, 2017, trial date remain in effect.

ORDER

IT IS ORDERED that:

1. Defendants' motion for partial summary judgment on plaintiff's conditions of confinement claims, Dkt. 33, is denied without prejudice.

2. The parties' joint motion for a stay of the dispositive motions deadline, Dkt. 55, is GRANTED. The new dispositive motions deadline is October 14, 2016.

Entered August 5, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge